| | |
|---|---|
| Roxann Paulson, Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 17-20094-Civ-Scola |
| Cosmetic Dermatology, Inc. dba dr. ) | |
| brandt skincare, Stephane Colleu, ) | |
| John Michael Bain, and Tamara ) | |
| Matha, Defendants. ) | |

## Order on Defendants' Partial Motion to Dismiss

Plaintiff Roxann Paulson brings this lawsuit against Cosmetic Dermatology, Inc., doing business as dr. brandt skincare ("CDI"), Stephane Colleu, John Michael Bain, and Tamara Matha for unlawful termination and actions taken in furtherance of that termination. This matter is before the Court on the Defendants' partial motion to dismiss (**ECF No. 16**). For the reasons set forth in this order, the Court **grants in part and denies in part** the motion to dismiss.

1. **Background**

Paulson worked as CDI's Vice President of Marketing and Executive Creative Director from February 2, 2015 until her termination on February 11, 2016. (Compl. ¶ 6, ECF No. 1.) Paulson reported directly to Colleu, CDI's Chief Executive Officer. (*Id.* at ¶ 13.) Bain served as Vice President of Sales for CDI and Matha served as Executive Director of Finance and handled CDI's Human Resources. (*Id.* at ¶¶ 9–11.) According to the complaint, Paulson was "subjected to continuous and escalating harassment" from Bain—harassment that was reported to both Colleu and Matha. (Compl. ¶ 15, ECF No. 1.) Despite Paulson's and other employees' complaints, Bain was never disciplined or terminated for his behavior. (*Id.* at ¶¶ 15–20, 30.)

At some point during her employment, Paulson terminated Author Gallow, a friend of Matha's. (*Id.* at ¶ 68.) According to the complaint, this action created a personal rift between Paulson and Matha, leading Matha to "solicit[] staff to change their opinions about Paulson, alleg[e] to staff that Paulson had planned to make personnel changes, [and] imply[] to staff that Paulson had intended to terminate them." (*Id.* at ¶¶ 31, 68.) On February 11, 2016, Matha informed Paulson of her termination, citing complaints that Paulson was bullying members of her Product Development team. (*Id.* at ¶ 24.) Later in the

evening, Matha received emails from three employees that allegedly contained solicited, false complaints about Paulson. (*Id.* at ¶¶ 25–26, 28.) Matha sent "a company-wide email notifying staff in the United States and all global countries, that Paulson had been terminated for 'violat[ing] company policy.'" (*Id.* at ¶ 27.) According to the complaint, "[t]he email went on to note that CDI has 'zero tolerance' for behavior that 'cause[s] another individual any type of harassment and behavior that is unprofessional.'" (*Id.*)

Paulson alleges that Matha's email defamed her in her professional capacity and amounts to libel *per se* because it contained "false statements [that] not only impugned Paulson's integrity, character and reputation as a business professional, but also indicate she lacks sufficient ability to perform her professional duties." (*Id.* at ¶ 59.) Paulson also alleges that Matha's actions in soliciting and obtaining false emails that resulted in Paulson's discharge interfered with Paulson's business relationship with her employer and were part of a conspiracy to interfere with that business relationship. (*Id.* at ¶¶ 65–75.) The Defendants move to dismiss, arguing that the complaint fails to state a claim for tortious interference with a business relationship against Matha or for defamation *per se* or conspiracy to interfere with a business relationship against all of the Defendants.

## 2. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a

claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### 3. Analysis

The Defendants have moved to dismiss four causes of action in the complaint in their entirety and two causes of action as they are applied to individual defendants. The Court will address each of the counts specifically set forth in the complaint.

### A. Counts One and Two

Count one asserts that CDI, Colleu and Matha discriminated against Paulson by targeting her for discharge on the basis of her age. (Compl. at 6–7, ECF No. 1.) Count two asserts that CDI, Colleu and Matha discriminated against Paulson by targeting her for discharge on the basis of her gender. (*Id.* at 7–8.) The Defendants moved to dismiss counts one and two as applied to Colleu and Matha. (Mot. at 2–3, ECF No. 16.) Paulson concedes that counts one and two are not properly asserted against those defendants. (Resp. at 1, ECF No. 19.) Accordingly, counts one and two fail to state a claim against Colleu and Matha upon which relief may be granted. *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007) (noting that under Title VII and the Age Discrimination in Employment Act "individual defendants are not amenable to private suit").

### B. Count Three

Count three asserts a claim for defamation *per se* against CDI, Colleu and Matha. (Compl. at 8–9, ECF No. 1.) Paulson asserts that following her termination, Matha "sent a company-wide email notifying staff in the United States and all global countries, that Paulson had been terminated for 'violat[ing] company policy'" and that the email also "note[d] that CDI has 'zero tolerance' for behavior that 'cause[s] another individual any type of harassment and behavior that is unprofessional.'" (*Id.* at 5.)

To recover for libel under Florida law, a plaintiff must establish that: 1) the defendant published a false statement; 2) about the plaintiff; 3) to a third party; and 4) the party suffered damages as a result of the publication. *See Valencia v. Citibank Int'l*, 728 So. 2d 330 (Fla. 3d DCA 1999). Libel may be proven two ways: *per se* or *per quod*. *See Hoch v. Rissman*, 742 So. 2d 451, 457 (Fla. 5th DCA 1999). Libel *per quod* requires an additional explanation of, or an interpretation of innuendo suggested by, the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement. *See Leavitt, D.O. v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003); *Ordonez v. Icon Sky Holdings LLC*, 2011 WL 3843890, at *7 (S.D. Fla. Aug. 30, 2011)

(Seitz, J.); *Hoch*, 742 So. 2d at 457. That is, defamation *per quod* requires explanation of context. In *per quod* actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo. *See Leavitt*, 291 F. Supp. 2d at 1342. Therefore, in *per quod* actions, the plaintiff must assert actual economic damage. *Id.*

By contrast, libel *per se* does not require any additional explanation in order to prove the defamatory nature of the statement. *See Leavitt*, 291 F. Supp. 2d at 1342; *Ordonez*, 2011 WL 3843890, at *7. In a *per se* action, consideration is given only to the "four corners" of the publication and the language used should be interpreted as the "common mind" would normally understand it. *See Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (King, J.); *McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986). In a *per se* action, the statements are "so obviously defamatory" and "damaging to reputation" that the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact. *See Alan v. Wells Fargo Bank, N.A.*, 604 Fed. App'x. 863, 865 (11th Cir. 2015); *see also Campbell v. Jacksonville Kennel Club Inc.*, 66 So. 2d 495, 497 (Fla. 1953). The plaintiff is therefore not required to allege general damages, because the harm is readily apparent. *See Campbell*, 66 So. 2d at 497.

*Per se* defamatory language may take a variety of forms. The most classic example is language that charges a person with an infamous crime or tends to subject him to hatred, distrust, ridicule, contempt, or disgrace. *See Rubin v. United States News & World Report Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001); *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955). Additionally, language that interferes with one's profession can be *per se* defamatory. Two iterations of this latter form of *per se* defamatory language appear in Florida case law. One iteration finds actionable any language that "tend[s] to injure a person in [her] office, occupation, business, or employment and which in natural and proximate consequence will necessarily cause injury." *See Metropolis Co. v. Croasdell*, 199 So. 568, 569 (Fla. 1941); *see also Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 5th DCA 2005); *Ordonez*, 2011 WL 3843890 at *7. Another iteration requires language that "imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office." *See, e.g., Fun Spot of Fla. v. Magical Midway of Cent. Fla., Ltd.*, 242 F. Supp. 2d 1183, 1197 (M.D. Fla. 2002); *Campbell*, 66 So. 2d at 497; *Ortega Trujillo*, 17 F. Supp. 2d at 1339; *Hoch*, 742 So. 2d at 457.

Here, considering the statements in Matha's email as the "common mind" would, *see Ortega Trujillo*, 17 F. Supp. 2d at 1339, the Court finds that

the complaint fails to state a claim for defamation *per se*. Because Matha sent her company-wide email after Paulson's termination, the email does not "tend to injure a person in [her] office, occupation, business, or employment." *Metropolis*, 199 So. at 569. CDI had already terminated Paulson so an email to CDI employees informing them of that termination would not necessarily tend to injure Paulson in her employment, which no longer existed.

Moreover, Matha's statement that Paulson had been terminated for "violat[ing] company policy" does not impute to her "conduct, characteristics, or a condition incompatible with the proper exercise of [her] lawful business, trade, profession or office." *See Fun Spot of Fla.*, 242 F. Supp. 2d at 1197. Rather, it simply provides a generic explanation for Paulson's termination without providing the details behind the violation of company policy. If anything, by omitting the details, Matha's email actually avoids providing information that could be construed as defamatory *per se*.

Nor does a factual statement that "CDI has 'zero tolerance' for behavior that 'cause[s] another individual any type of harassment and behavior that is unprofessional'" rise to the level of being "so obviously defamatory" and "damaging to reputation" as to qualify as defamatory *per se*. *See Alan*, 604 Fed. Appx. at 865. Paulson does not allege that this statement is false, which is the first element required for establishing defamation. *See Valencia*, 728 So. 2d 330 ("To state a cause of action for defamation, in Florida, a plaintiff must allege that (1) the defendant published a false statement . . ."). Further, the statement about CDI's "zero tolerance" policy does not reference Paulson. Instead, Paulson seeks to connect the factual statement about CDI's "zero tolerance" policy to Matha's statement that Paulson was terminated for violating company policy. (Resp. at 4, ECF No. 19.) But this type of innuendo would, at best, render the claim as one for libel *per quod*. *See Leavitt*, 291 F. Supp. 2d at 1345.

Courts have found statements defamatory *per se* in this context where, for example: the plaintiff was accused of being drunk on the job and that accusation was repeated to his manager and other employees, *see Glynn v. City of Kissimmee*, 383 So. 2d 774, 775–76 (Fla. 5th DCA 1980); patients were told that a doctor's work quality was poor and that his procedures required subsequent corrective work, which impugned the doctor's professional competence and fitness as a surgeon, *see Leavitt*, 291 F. Supp. 2d at 1345–46; a former supervisor told a prospective employer that an interviewee was "bad news," that she was prone to file frivolous sexual harassment charges, and that "you don't want her in your company," all of which suggested conduct incompatible with the proper exercise of her employment duties, *see Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1381 (M.D. Fla. 2002); a lawyer stated that "if you wanted to influence Judge Hoch, you should

send men in tight shorts before him," thereby suggesting that the judge's official duties could be improperly influenced and imputing to him conduct or a condition incompatible with the proper exercise of his judgeship, *see Hoch*, 742 So. 2d at 457. In all of the above cases, the *per se* defamatory statements imputed conduct to the plaintiffs that was incompatible with the essential functions of their respective jobs. By contrast, the conduct suggested of Paulson—that she violated an unnamed company policy—does not impute to her a characteristic inconsistent with her duties as Vice President of Marketing and Executive Creative Director. Thus, there can be no claim for defamation *per se* under the facts alleged.

While Matha's statements *might*, under some set of facts, conceivably cause injury to Paulson's future employment, the statements are not injurious in and of themselves and, hence, not defamatory *per se*. To gauge whether the statements are defamatory, the Court would have to look outside the four corners of the statements to evaluate all the surrounding facts and circumstances, including whether Paulson suffered some form of damage as a result of Matha's statements. When context is considered and "extrinsic facts and innuendo are needed to prove the defamatory nature of the words," the statements are not defamatory *per se*. *Scobie v. Taylor*, No. 13-60457-Civ, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) (Scola, J.); *see also Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1006 (S.D. Fla. 1996) (Ungaro, J.). If Paulson wishes to attempt to raise defamation *per quod* claims, assuming she can allege the requisite facts and damages in support, the Court will allow her to amend her complaint.

### C. Count Four

Count four of the complaint asserts a claim of tortious interference with a business relationship against Defendant Matha. (Compl. at 9–10, ECF No. 1.) Pursuant to Florida law, Paulson must establish five elements to state a claim for tortious interference with a business relationship: (1) the existence of a business relationship under which the claimant has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damage to the claimant caused by the interference. *See Future Tech Int'l, Ltd. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1569 (S.D. Fla. 1996) (Marcus, J.); *Salit v. Ruden McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999). The Defendants argue that there is no possibility that Paulson can state a claim for tortious interference against Matha under Florida law because Paulson cannot meet the fourth element, i.e., because Matha is not a third party to the putative employment relationship. (Mot. at 5–6, ECF No. 16.)

The Court disagrees and finds that Paulson has alleged the elements necessary to state a claim for tortious interference. The Defendants are correct in stating that under Florida law, a cause of action for tortious interference generally does not exist against one who is himself a party to the business relationship subject to the interference. (*See id.*); *Ethyl Corp. v. Balter*, 386 So. 2d 1220 (Fla. 3d DCA 1980). Moreover, as the Defendants also point out, Florida courts have established that in the context of a managerial or supervisory employee terminating a plaintiff's employment, an action will usually not lie against the terminating employee because she is considered a party to the employment relationship. *See West v. Troelstrup*, 367 So. 2d 253, 255 (Fla. 1st DCA 1979); *Doyal v. School Board of Liberty County*, 415 So. 2d 791 (Fla. 1st DCA 1982). However, Florida courts have also clarified that the privilege to interfere "enjoyed by a party that is integral to the business relationship is not absolute. The privilege is divested when the defendant acts solely with ulterior purposes and the advice is not in the principal's best interest." *O.E. Smith's Sons, Inc. v. George*, 545 So. 2d 298, 299 (Fla. 1st DCA 1989); *see also Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001) (Gold, J.); *Salit*, 742 So. 2d at 385; *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987).

Here, Paulson's complaint alleges that Matha acted with ulterior motives that were harmful to CDI. (Compl. at 10, ECF No. 1.) Paulson specifically alleges in count four that "Matha maliciously and intentionally interfered with Paulson's employment relationship by inducing her discharge without an honest belief that these actions would benefit CDI" and that Matha "maneuver[ed] to get Paulson fired for personal reasons, such as the fact that Paulson had terminated one of Matha's friends, Author Gallow." (*Id.*) Paulson also states that her "termination was not in CDI's best interest." (*Id.*) Based on these allegations, the Court finds that the complaint sufficiently classifies Matha as a third party to the employment relationship. Thus, the Court declines to dismiss count four.

### D. Count Five

Count five asserts that "[a]ll Defendants" conspired to interfere with that same business relationship. (Compl. at 10, ECF No. 1.) To plead civil conspiracy, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 Fed. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)). Florida law does not recognize an independent cause of action for civil

conspiracy; rather, the plaintiff must allege an underlying illegal act or tort on which the conspiracy is based. *See Raimi*, 702 So. 2d at 1284 ("an actionable conspiracy requires an actionable underlying tort or wrong"); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541–42 (11th Cir. 1990) ("The basis for the conspiracy must be 'an independent wrong or tort which would constitute a cause of action if the wrong were done by one person.'") (quoting *American Diversified Ins. Servs. v. Union Fidelity Life Ins. Co.*, 439 So. 2d 904, 906 (Fla. 2d DCA 1983)). Tortious interference with a business relationship can constitute an unlawful act for the purposes of pleading a claim for civil conspiracy. *Am. Diversified Ins. Servs., Inc. v. Union Fid. Life Ins. Co.*, 439 So. 2d 904, 907 (Fla. 2d DCA 1983). Therefore, count five is premised on the underlying tort that serves as the basis for count four: tortious interference with a business relationship.

Paulson does not allege that Defendants CDI, Colleu, or Bain tortiously interfered with Paulson's employment pursuant to count four. Instead, count four is asserted only against Defendant Matha and is premised on actions taken by Matha in concert with individuals who are not named as defendants. (Compl. at 9–10, ECF No. 1.) The fact that Matha acted out of personal animus to precipitate Paulson's termination, absent any allegations of any agreement to conspire with Defendants CDI, Colleu, or Bain, cannot alone support Paulson's conclusory assertion that the Defendants conspired to interfere with a business relationship. *See Russo v. Fink*, 87 So. 3d 815, 819 (Fla. 4th DCA 2012) ("Because [the complaint] never alleged that there was an agreement, it has failed to allege sufficient facts with respect to the conspiracy count."); *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1300 (M.D. Fla. 2002) (dismissing claim for civil conspiracy where plaintiff did not allege or provide the court with sufficient facts to infer an agreement between defendants). Paulson does not assert that Defendants CDI, Colleu, or Bain were even aware of Matha's alleged actions of tortious interference. Absent such allegations, Paulson's claim against Defendants CDI, Colleu, and Bain fails to state a claim upon which relief may be granted. *See Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (a conspirator must "know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators."); *see also Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025 (Fla. 3d DCA 1981) ("Absent the underlying tort of willful interference, there can be no cause of action for conspiracy to interfere.").

However, Paulson's claim against Defendant Matha in count five does not suffer from such a deficiency. As noted above, Paulson's cause of action for tortious interference against Matha is sufficiently pled under Fed. R. Civ. P. 8(a). Paulson alleges that Matha worked with other individuals to "accuse[] Paulson of harassment and other violations of corporate policy," which resulted

in her termination. (Compl. at 10, ECF No. 1.) Although Paulson does not directly allege that Matha formed an agreement with other employees to create emails that falsely accused Paulson of violating company policy, taking the allegations of the Complaint as true and viewing them in their most favorable light, Paulson has pled all of the required elements for a claim of civil conspiracy as it relates to Matha. *Regions Bank v. Kaplan*, No. 8:12-CV-1837, 2013 WL 1193831, *10 (M.D. Fla. Mar. 22, 2013) ("The presence of a conspiracy is often established by circumstantial evidence rather than direct evidence."). Therefore, the motion to dismiss count five as to Defendant Matha is denied.

### E. Count Six

Count six asserts that all Defendants intentionally inflicted emotional distress upon Paulson. (Compl. at 10–11, ECF No. 1.) Paulson does not oppose the Defendants' motion to dismiss as it relates to count six. (Resp. at 1, ECF No. 19.) Accordingly, count six is dismissed with prejudice.

### 4. Conclusion

For the reasons explained above, it is hereby **ordered** that the Defendants' motion to dismiss (ECF No. 16) is **granted in part and denied in part** as set forth below:

1. counts one and two as asserted against Defendants Colleu, Bain, and Matha are **dismissed with prejudice**;
2. count three is **dismissed**, with leave to amend on or before **June 22, 2017**;
3. count four is not dismissed;
4. count five as asserted against Defendants CDI, Colleu, and Bain is **dismissed with prejudice**, but is not dismissed with respect to Defendant Matha; and
5. count six is **dismissed with prejudice**.

If Paulson declines to file an amended complaint, she must file a notice indicating that intention on or before **June 13, 2017**. If Paulson files such a notice, the Defendants must respond to the complaint on or before **June 20, 2017**. If, on the other hand, Paulson does file an amended complaint, the Defendants must respond to the complaint within two weeks of its filing.

**Done and ordered** in chambers, at Miami, Florida, on June 8, 2017.

Robert N. Scola, Jr.
United States District Judge